**FILED**

JUN – 2 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Sharon Adelman-Reyes, Ph.D, | ) | **JUDGE DER-YEGHIAYAN** |
| | ) | |
| Plaintiff, | ) | **05C 3269** |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| Saint Xavier University | ) | **MAGISTRATE JUDGE DENLOW** |
| and Beverly Gulley, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Sharon Adelman-Reyes, by her attorneys, The Schroeder Group, S.C., Attorneys at Law, alleges:

### PARTIES

1. Plaintiff, Sharon Adelman-Reyes ("Dr. Reyes"), is an adult resident of the State of Illinois, residing at 5519 N. Virginia Avenue, Chicago, Illinois.

2. Defendant, Saint Xavier University ("SXU"), is an Illinois corporation duly authorized to transact business in and under the laws of the State of Illinois, with its principal offices located at 3700 West 103rd Street, Chicago, Illinois. At all times material, SXU conducts and has conducted substantial and not isolated business in Illinois. SXU is an employer within the meaning of 42 U.S.C. § 2000(e)(b), and is engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000(e)(h).

3. Defendant, Beverly Gulley ("Gulley"), is an adult resident of the State of Illinois, whose last known mailing address is 175 N. Harbor Drive, Chicago, Illinois. At

all times material, Gulley was Dean of the School of Education (SOE) as SXU. As Dean of SOE, Gulley was a direct supervisor of Dr. Reyes and had the ability to make decisions affecting her employment with SXU and to influence decisions affecting her employment with SXU.

## JURISDICTION AND VENUE

4.     This civil action arises under the laws of the United States and under Illinois common law. The claims against SXU are for discrimination and retaliation in employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000(e-2)(a) ("Title VII"), and for breach of contract. The claims against Gulley are for tortious interference with prospective economic advantage. This court has subject jurisdiction of these claims under Title VII by reason of 42 U.S.C. § 2000(e-5)(f)(3) and under the laws of the State of Illinois by reason of 28 U.S.C. § 1367(a).

5.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claim occurred in this district, and pursuant to 42 U.S.C. § 2000(e-5)(f)(3), as the practices affecting the employment of Dr. Reyes occurred in this district and the records relevant to the practices are maintained and administered in the district.

## FACTUAL BACKGROUND

### Dr. Reyes' Employment with SXU,

6.     Dr. Reyes accepted a full-time non-tenure track faculty position in the SOE at SXU for the 1998-99 academic year. The appointment combined a half-time teaching position in the SOE and an administrative position as Coordinator of Urban Initiatives. In the Coordinator position, Dr. Reyes was responsible for soliciting and administering

2

grants awarded to the SOE by the Chicago Public Schools. In this position, Dr. Reyes was successful in securing numerous grants and she successfully implemented the grants she secured.

7.     During the entirety of her employment with SXU, Gulley was Dr. Reyes' immediate supervisor. Throughout her employment, Dr. Reyes practiced in the Jewish faith. In fact, during the course of Dr. Reyes' employment with SXU, she was the only full-time faculty of Jewish religion/heritage within the SOE.

8.     On August 30, 2001, then Vice President for Academic Affairs ("VPAA"), Christopher Chalokwu ("Chalokwu") agreed to convert Dr. Reyes' appointment to a tenure track position as recommended by Dean Gulley. Dr. Reyes' appointment status was converted to Assistant Professor, tenure track, commencing with the 2001-02 academic year.

### *Dr. Reyes' Promotion to Associate Professor.*

9.     For the 2002-03 academic year, Dr. Reyes requested, and was granted, full-time teaching status at SXU. Later that academic year, Dr. Reyes applied for promotion to the rank of Associate Professor. On September 27, 2002, the SOE Rank and Tenure Committee recommended that Dr. Reyes be promoted. Dean Gulley also recommended that Dr. Reyes be promoted. Dean Gulley characterized Dr. Reyes as an effective teacher, noting above-average student evaluations, and acknowledging that Dr. Reyes' record of scholarship and service was exceptional.

10.     On or about March 1, 2003, the University Rank & Tenure Committee recommended that Dr. Reyes be promoted to the rank of Associate Professor. This Committee concluded that Dr. Reyes teaching was good, that her scholarship was good

and that her service of the School/University was also good. Shortly thereafter, then VPAA Chalokwu noted his agreement, and on or about April 11, 2003, Richard Yanikoski, then President of SXU, formally acknowledged Dr. Reyes' promotion to the rank of Associate Professor.

11.     At no point during this promotion process did anyone or any committee raise any specific concerns about Dr. Reyes' teaching effectiveness, her scholarship or her service to SXU. In addition, no one expressed any concerns about Dr. Reyes' pedagogy. To the contrary, all feedback provided to Dr. Reyes was extremely positive in nature.

12.     Prior to this time, Dr. Reyes had never received any complaints by SXU about her performance or her progress toward tenure. In fact, Dr. Reyes had received a number of accolades and commendations by the administration at SXU in recognition of her superior performance and for the purpose of inducing Dr. Reyes to continue her employment with SXU.

13.     During the fall of 2003, Dean Gulley had an opportunity to evaluate Dr. Reyes' teaching. Dean Gulley's comments were positive. Dean Gulley's written report did not raise any concerns about Dr. Reyes' pedagogy.

14.     Dr. Reyes applied for tenure during the fall of 2003. On or about October 1, 2003, the SOE Rank & Tenure Committee recommended that Dr. Reyes be granted continuous tenure. The Committee observed that student evaluations were overwhelmingly positive and that colleagues characterized Dr. Reyes as an excellent teacher. This Committee concluded that Dr. Reyes' teaching was good; that her scholarship was excellent; that her service to the School and the University was good.

4

In addition, the Committee identified her as a faculty member who "has and will continue to contribute to the intellectual life of the University."

15.     Around this same time, Dr. Reyes requested a sabbatical. Sabbaticals at SXU are not lightly awarded; they are competitive in nature and are awarded to a limited number of faculty during any given year. In order to be awarded a sabbatical, Dr. Reyes had to compete with other faculty members. When a faculty member at SXU is awarded a sabbatical, the faculty member is required to return to SXU for at least one year following the sabbatical.

16.     On or about October 6, 2003, the University Sabbatical Leave Committee recommended that Dr. Reyes' request for a sabbatical be granted. Dean Gulley concurred in this recommendation. The request for a sabbatical was subsequently approved by Dr. Judith Dwyer, current President of SXU, on or about December 9, 2003. The University Sabbatical Leave Committee, along with others involved in this selection process, including Dean Gulley and President Dwyer, were keenly aware that Dr. Reyes had applied for tenure when the sabbatical was conferred. Because Dr. Reyes had been given a sabbatical, she had every expectation that she would be returning to SXU after her sabbatical and that she would be receiving tenure.

## Discrimination Against Dr. Reyes and Dr. Reyes' Complaint of Discrimination.

17.     Immediately before Passover in 2003, Dr. Reyes was asked to attend an awards event at SXU where two of her graduate students were receiving awards. She was unable to attend because of her religious beliefs and notified the appropriate individuals, including Dean Gulley and then VPAA Chalokwu. Dr. Reyes also asked then VPAA Chalokwu that consideration be given to Jewish religious holidays when

5

scheduling events which required her attendance. At the awards ceremony, then VPAA Chalokwu announced to the audience that Dr. Reyes was unable to attend because she was celebrating Passover. Dean Gulley was present at the awards ceremony and made the awards on Dr. Reyes' behalf. From this point forward, Dean Gulley was fully aware of Dr. Reyes' religious beliefs.

18.     Throughout Dr. Reyes' employment with SXU, numerous individuals have reported to Dr. Reyes that Dean Gulley or her designee have made antisemetic remarks and derogatory comments about other members of the SXU community of minority status/heritage and that she has made derogatory comments about Dr. Reyes religious beliefs and/or religious practices. These comments translated to discriminatory practices against Dr. Reyes.

19.     On or about September 22, 2003, Dr. Reyes e-mailed then VPAA Chalokwu to notify him of ongoing harassment by Dean Gulley. Dr. Reyes complained to then VPAA Chalokwu about Dean Gulley's ongoing harassment of her. Dr. Reyes believed that Dean Gulley was harassing her because of her religious beliefs which Dean Gulley associated with her support of minorities and their advocacy.

## Dr. Reyes is Retaliated Against and Her Employment Interfered With.

20.     At the time Dr. Reyes sought tenure by SXU, Dean Gulley knew of Dr. Reyes' employment relationship with SXU and knew that the University Rank & Tenure Committee would not recommend that Dr. Reyes receive continuous tenure if she wrote a substantially negative recommendation for Dr. Reyes.

21.     On or about October 15, 2003, Dean Gulley prepared a report which recommended that Dr. Reyes be denied tenure. However, despite subsequent requests

6

by Dr. Reyes, Dean Gulley did not provide a copy of her written recommendation to Dr. Reyes until after the University Rank & Tenure Committee had completed its written report and recommendation. It was unusual for Dean Gulley not to provide a tenure candidate with a copy of the recommendation within a reasonable period of time after it was submitted to the University Rank & Tenure Committee.

22.     Dean Gulley knew that Dr. Reyes had complained to then VPAA Chalokwu about Dean Gulley's harassment at the time she prepared the negative report. Dean Gulley prepared the negative recommendation of tenure document in response to Dr. Reyes' opposition to and complaints about Dean Gulley's harassment.

23.     In her report, without elaboration, Dean Gulley stated that unspecified faculty expressed concern about Dr. Reyes' collegiality. Dean Gulley evaluated Dr. Reyes' teaching as good, her scholarship as very good, and her service as fair. With respect to service, Dean Gulley inappropriately claimed without explanation that Dr. Reyes' contribution on committees was sometimes less than expected. Dean Gulley also inappropriately suggested that tenure should be denied because of low enrollment in the ESL/Bilingual Education Program, the program where Dr. Reyes taught. Finally, without specification or elaboration, Dean Gulley inappropriately concluded that Dr. Reyes had not met the promise of continued contribution to the intellectual life of the University.

24.     Prior to March 2004, when Dean Gulley's recommendation on tenure was finally provided to Dr. Reyes, Dean Gulley never gave Dr. Reyes any negative feedback about her teaching ability, about her scholarship, about her service to SXU or about her ability to contribute to the intellectual life of SXU. Indeed, prior to October 2003 when

7

Dean Gulley wrote the negative recommendation, she never gave Dr. Reyes any negative feedback about her teaching ability, about her scholarship, about her service to SXU or about her ability to contribute to the intellectual life of SXU.

25.    On or about March 1, 2004, the University Rank & Tenure Committee recommended that Dr. Reyes be denied tenure. The decision of this Committee was influenced by Dean Gulley's recommendation against tenure. Then VPAA Chalokwu and President Dwyer each affirmed the recommendation against tenure and their decisions were also influenced by Dean Gulley's recommendation against tenure. The allegations of this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

26.    In 2004, Dr. Reyes was invited to sit on a selection committee to determine who would receive the University Scholarship Award at SXU. Despite her request in 2003 regarding consideration of scheduling during Jewish religious holidays, a very important meeting for the selection committee was scheduled when Dr. Reyes could not attend because of her Passover obligations. She informed the committee of her inability to meet during the scheduled time. Regardless, the meeting was held without her presence. While Dr. Reyes did provide feedback for the applications via e-mail, she was severely criticized for giving feedback in written form.

## Dr. Reyes' Grievance.

27.    On or about April 20, 2004, Dr. Reyes filed a grievance relating to the recommendation against tenure. Dr. Reyes supplemented her grievance on or about April 28, 2004. Dr. Reyes was entitled to grieve the adverse tenure decision pursuant to the terms of the SXU Faculty Handbook and the SXU Faculty Bylaws.

8

28.     After reviewing the grievance, the SXU Faculty Grievance Committee ("UFGC") concluded that the tenure process "denied Dr. Reyes an opportunity for a full and fair hearing." The UFGC recommended review by a Formal Hearing Committee ("FHC").

## SXU's Breach of Contract.

29.     The SXU Faculty Handbook and the SXU Faculty Bylaws delineated certain contractual rights and duties existing between SXU and Dr. Reyes.

30.     Dean Gulley was required, through the SXU Faculty Handbook, to evaluate Dr. Reyes on an annual basis to address Dr. Reyes' progress toward tenure, including, but not limited to, satisfaction of the academic credentials requirement; teaching effectiveness; continuing professional development and active contribution in the appropriate scholarly, artistic or professional discipline; and service to the University beyond the requirements of the classroom.

31.     Dean Gulley failed to comply with the provisions of the SXU Faculty Handbook and the Faculty Bylaws by ensuring that Dr. Reyes be provided written annual evaluations to Dr. Reyes regarding her progress toward tenure. Indeed, Dean Gulley provided no written criticisms to Dr. Reyes prior to the time that she applied for tenure which would have put Dr. Reyes on notice that she would not receive tenure or that her employment with SXU was at risk.

32.     In addition, SXU's Faculty Handbook provides a procedure for a formal hearing upon the filing of a grievance due to denial of tenure. Dr. Reyes complied with the prerequisites for requesting a formal hearing. A three-member panel was convened to serve as the FHC.

9

33.     SXU was bound to ensure that the letter and spirit of the provisions for promotion and tenure and for grievances submitted to the FHC were followed.

34.     Pursuant to SXU's Faculty Handbook, the FHC is required to assemble all relevant evidence relating to the grievance. In addition, the FHC is authorized to conduct its own investigation. The hearing procedures used by FHC are to be consistent with those recommended for hearings by the *American Association of University Professors Policy Documents and Reports, 1995 edition*, or as periodically updated.

35.     No "hearing" was ever conducted on Dr. Reyes' grievance. Dr. Reyes was not permitted the opportunity to present any evidence in support of her grievance to the FHC. The FHC, with one minority vote, failed or refused to assemble all relevant evidence relating to Dr. Reyes' grievance. The FHC, with one minority vote, failed or refused to conduct its own investigation. Additionally, despite a minority vote to the contrary, the FHC failed or refused to apply the procedures recommended for hearings by the *American Association of University Professors Policy Documents and Reports*.

36.     On or about February 22, 2005, President Dwyer accepted the majority view of the FHC. As a result, Dr. Reyes will not receive continuous tenure from SXU and her employment with SXU officially ceased as of May 23, 2005.

37.     Dr. Reyes has satisfied all of the procedural and administrative requirements set forth in Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e-5), including, but not limited to, the following:

a. Dr. Reyes filed a timely complaint of discrimination with the Illinois Department of Human Rights which was cross-filed with the Equal Employment Opportunity Commission ("EEOC");

b. The EEOC issued a Notice of Right to Sue, advising Dr. Reyes that she had the right to sue within 90 days of her receipt of the notification; and

c. Dr. Reyes has filed this action within 90 days of receipt of the Notice of Right to Sue.

## FIRST CAUSE OF ACTION
## RELIGIOUS DISCRIMINATION

38. Dr. Reyes alleges and incorporates as if fully set forth herein paragraphs 1 through 37 above.

39. Dr. Reyes was subjected to unequal terms and conditions of employment by SXU as alleged above. SXU discriminated against Dr. Reyes in the terms and conditions of her employment because of her religion, in violation of the Civil Rights Act of 1964, as amended.

40. As a direct and proximate result of the foregoing actions, Dr. Reyes has suffered and will continue to suffer, economic and non-economic damages including, but not limited to, loss of continuous tenure with SXU, lost pay and benefits, loss of future pecuniary gain and loss of reputation.

41. As a direct and proximate result of the foregoing actions, Dr. Reyes has suffered pain and other damages for which she seeks compensatory damages in an amount deemed just by the court.

42. SXU acted knowing of and recklessly disregarding the provisions of Title VII and is therefore subject to punitive damages.

11

## SECOND CAUSE OF ACTION
## RETALIATION

43.    Dr. Reyes realleges and incorporates as if fully set forth herein paragraphs 1 through 42 above.

44.    SXU retaliated against Dr. Reyes as alleged in the preceding paragraphs.

45.    Dean Gulley's negative recommendation letter on Dr. Reyes' bid for tenure was a direct and proximate cause of Dr. Reyes being denied continuous tenure with SXU. SXU's actions in denying Dr. Reyes continuous tenure, based either in whole or in part on Dean Gulley's negative comments were taken with intent to harm Dr. Reyes and with reckless disregard for the harm to Dr. Reyes. Said retaliation was willful, wanton and malicious.

46.    As a direct and proximate result of the foregoing actions, Dr. Reyes has suffered and will continue to suffer, economic and non-economic damages including, but not limited to, loss of continuous tenure with SXU, lost pay and benefits, loss of future pecuniary gain and loss of reputation.

47.    As a direct and proximate result of the actions of Dean Gulley and SXU, Dr. Reyes has suffered pain and other damages which she seeks compensatory damages in an amount deemed just by the court.

48.    SXU and Dean Gulley acted knowing of and recklessly disregarding the provisions of Title VII and is therefore subject to punitive damages.

12

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT

49.    Dr. Reyes realleges and incorporates as if fully set forth herein paragraphs 1 through 48 above.

50.    The SXU Faculty Handbook and SXU Faculty Bylaws created and delineated the contractual rights and duties existing between SXU and Dr. Reyes. The SXU Faculty Handbook and SXU Faculty Bylaws created binding contractual rights flowing to Dr. Reyes regarding, inter alia, evaluation prior to seeking tenure, to the tenure process, and to grievance procedures to be utilized in the event of an adverse tenure decision.

51.    SXU failed to ensure that Dean Gulley complied with her obligations to Dr. Reyes during Dr. Reyes' probationary period and prior to her application for tenure. SXU failed to follow its own procedures in conducting Dr. Reyes' tenure review. SXU also failed to follow its own procedures once Dr. Reyes' grievance was sent to the FHC. SXU's actions and omissions breached the terms of the Faculty Handbook and Faculty Bylaws, thereby creating a breach of contract.

52.    As a direct and proximate result of the foregoing actions, Dr. Reyes has suffered and will continue to suffer, economic and non-economic damages including, but not limited to, loss of continuous tenure with SXU, lost pay and benefits and loss of future pecuniary gain.

## FOURTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

53.    Dr. Reyes realleges and incorporates as if fully set forth herein paragraphs 1 through 52 above.

13

54. At the time Dr. Reyes applied for tenure from SXU, she was in a contractual relationship with SXU and had a reasonable expectation of continuing her employment with SXU both by a virtue of her position with SXU, the length of her employment and her documented superior performance. Based on the feedback she had received during her employment with SXU, Dr. Reyes had a reasonable expectation of receiving tenure.

55. In October 2003 and continuing, Dr. Reyes and SXU had a mutual and reasonable expectation of continuing the employment relationship and entering into a tenured employment relationship with SXU.

56. Despite the foregoing, Dean Gulley, without cause or justification and for her own personal benefit and gain and not in the best interests of SXU, intentionally and deliberately wrote a negative recommendation letter recommending that Dr. Reyes be denied continuous tenure. Dean Gulley knew that such recommendation and the statements contained therein would result in SXU denying Dr. Reyes' application for tenure. The allegations of this paragraph are likely to have evidentiary support after a reasonable opportunity to further investigation and/or discovery.

57. Dean Gulley had no legitimate business purpose and no privilege to disregard her obligations to Dr. Reyes under the SXU Faulty Handbook or the SXU Faculty Bylaws and had no legitimate business purpose or privilege to induce SXU to deny Dr. Reyes continuous tenure. Rather, Dean Gulley took the actions described in order to harm Dr. Reyes and cause her employment with SXU to be terminated.

58.     As a direct and proximate result of the actions and omissions by Dean Gulley, Dr. Reyes was denied continuous tenure by SXU, and her employment with SXU officially ended as of May 23, 2005.

59.     As a direct and proximate result of the foregoing actions, Dr. Reyes has suffered and will continue to suffer, economic and non-economic damages including, but not limited to, loss of continuous tenure with SXU, lost pay and benefits, loss of future pecuniary gain and loss of reputation.

60.     As a direct and proximate result of the actions of Dean Gulley, Dr. Reyes has suffered pain and other damages which she seeks compensatory damages in an amount deemed just by the court.

61.     Dean Gulley's actions and omissions were taken with the intent to harm Dr. Reyes and with reckless disregard for the harm to Dr. Reyes. Such interference was willful, wanton and malicious, and said conduct is subject to punitive damages.

**WHEREFORE,** Dr. Reyes requests the following relief:

a.      That the court order SXU and/or Gulley to pay Dr. Reyes an amount equal to all lost back wages and front pay, and all other sums of money, including retirement benefits and other employment benefits, together with interest on said amounts;

b.      That the court order SXU to reinstate Dr. Reyes with continuous tenure, or, in the alternative, that the court order SXU and/or Gulley to pay Dr. Reyes front pay sufficient to compensate her for the wages and other employment benefits that she otherwise would have earned but for the illegal conduct of SXU and/or Gulley;

c.      That the court order SXU and/or Gulley to pay Dr. Reyes compensatory damages in an amount deemed just by the court;

15

d.    That the court order SXU and/or Gulley to pay Dr. Reyes punitive damages in an amount deemed just by the court;

e.    That the court order SXU to pay the attorneys fees and out-of-pocket expenses and taxable litigation costs of Dr. Reyes as permitted pursuant to Title VII; and

f.    That the court order any other relief as it considers just and equitable.

### JURY DEMAND

Dr. Reyes demands a trial by jury on all claims.

Dated:    June 1, 2005.

Respectfully submitted,

Sally A. Piefer
THE SCHROEDER GROUP, S.C.
Attorneys at Law
20800 Swenson Drive, Ste. 475
Waukesha, WI 53186
(262) 798-8220
(262) 798-8232 (facsimile)
sap@tsglaw.com

AND

David L. Lee
The Law Offices of David L. Lee
53 W. Jackson Blvd., Suite 660
Chicago, IL 60604
(312) 347-4400
(312) 347-3272 (facsimile)
d-lee@davidleelaw.com (e-mail)

Direct Inquiries to:
Sally A. Piefer
(262) 754-1325
sap@tsglaw.com

818722-1