IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHARON ADELMAN-REYES,           )
                                )
    Plaintiff,              )
                                )
v.                              )    No. 05 C 3269
                                )
SAINT XAVIER UNIVERSITY AND     )
BEVERLY GULLEY,                 )
                                )
    Defendants.             )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN

This matter is before the court on Defendant Beverly Gulley's ("Gulley") motion to dismiss Count IV of Plaintiff Sharon Adelman-Reyes' ("Adelman-Reyes") complaint. For the reasons stated below, we deny the partial motion to dismiss Count IV.

## BACKGROUND

Adelman-Reyes alleges that she began working for Defendant Saint Xavier University ("St. Xavier") in an administrative position during the 1998-1999 academic year. Adelman-Reyes claims that throughout her employment with St. Xavier, Gulley was Dean of the School of Education ("SOE") and was her

1

immediate supervisor. According to Adelman-Reyes, in 2001, Adelman-Reyes' position was converted to a tenure-track Assistant Professor and, by 2003, Adelman-Reyes had been promoted to the position of full-time Associate Professor. Adelman-Reyes alleges that during her time as a full-time Associate Professor, no specific concerns had ever been raised, by Gulley or anyone else, about her teaching abilities, scholarship, service to St. Xavier, or her religious beliefs. Adelman-Reyes further alleges that, during this time, no one had complained to her about her performance or progress toward tenure.

Adelman-Reyes alleges that, as of Passover in 2003, Gulley and Christopher Chalokwu ("Chalokwu"), the Vice President for Academic Affairs at that time, were aware that Adelman-Reyes practiced the Jewish faith. Adelman-Reyes alleges Gulley and Chalokwu became aware of Adelman-Reyes' religious beliefs when she informed them she would not be attending a student awards ceremony due to the ceremony's temporal proximity to Passover. Adelman-Reyes claims that throughout her time at St. Xavier she was approached by numerous people who informed Adelman-Reyes that Gulley had made anti-Semitic remarks, derogatory comments about Adelman-Reyes' religious beliefs and practices, and derogatory comments about other minority members of St. Xavier. Adelman-Reyes claims that in September 2003, she emailed Chalokwu to inform him of and complain about Gulley's alleged harassment. In the email, Adelman-Reyes claimed that Gulley was harassing her because of her religious beliefs.

Adelman-Reyes alleges that the St. Xavier Faculty Handbook ("Handbook") and St. Xavier Faculty Bylaws ("Bylaws") articulated contractual rights and responsibilities between St. Xavier and Adelman-Reyes. According to Adelman-Reyes, the Handbook required Gulley to evaluate Adelman-Reyes annually and that the reviews were supposed to address her progress toward tenure. Adelman-Reyes further claims that Gulley did not comply with these requirements when Gulley failed to provide Adelman-Reyes any written feedback that would put her on notice that she may not receive tenure or that her employment with St. Xavier was at risk.

In the fall of 2003, Adelman-Reyes applied for tenure and the SOE Rank & Tenure Committee recommended that Adelman-Reyes' application be granted. Adelman-Reyes alleges Gulley knew that if she wrote a negative recommendation letter, the University Rank & Tenure Committee ("URTC") would not recommend Adelman-Reyes for tenure. Adelman-Reyes claims that Gulley then prepared a report recommending Adelman-Reyes be denied tenure based on concerns regarding Adelman-Reyes's collegiality, contribution to committees, failure to keep her promise to continuously contribute to St. Xavier's intellectual life, and low enrollment in Adelman-Reyes' program. Adelman-Reyes alleges that Gulley refused to provide Adelman-Reyes with a copy of this report until after the URTC had made its recommendation. At the time Gulley made the report, Adelman-Reyes alleges that Gulley was aware of Adelman-Reyes' complaints about Gulley's harassment. Adelman-Reyes further alleges that Gulley prepared and submitted the report in

3

response to Adelman-Reyes' complaints about Gulley's harassment. Adelman-Reyes contends that Gulley had never given her any negative feedback before Adelman-Reyes received the report in March of 2004. In March 2004, the URTC recommended Adelman-Reyes be denied tenure. Adelman-Reyes alleges that Chalokwu and St. Xavier President Dr. Judith Dwyer ("Dwyer") both affirmed the recommendation that Adelman-Reyes be denied tenure and that the decisions of the URTC, Chalokwu, and Dwyer were all influenced by the negative report submitted by Gulley.

In April 2004, Adelman-Reyes filed a grievance in regard to the denial of her tenure. The St. Xavier Faculty Grievance Committee ("UFGC") reviewed Adelman-Reyes' grievance and concluded that Adelman-Reyes had not been given an opportunity for a "full and fair hearing." The UFGC then recommended a review by the Formal Hearing Committee ("FHC"). The Handbook provides a procedure for a formal hearing when one files a grievance relating to a denial of tenure. Adelman-Reyes claims that she complied with all of the prerequisites of this procedure and a three-member panel of the FHC was assembled. Adelman-Reyes asserts that St. Xavier was required to ensure that the provisions for promotion, tenure, and grievances submitted to the FHC were followed. According to Adelman-Reyes, the Handbook requires the FHC to assemble all evidence relating to the grievance and authorizes the FHC to conduct independent investigations. Adelman-Reyes further alleges that the Handbook requires the FHC to use hearing procedures consistent

4

with those recommended by the American Association of University Professors Policy Documents and Reports ("AAUP").

Adelman-Reyes claims that no hearing was ever conducted in accordance with the required hearing procedures relating to her grievance. Adelman-Reyes claims that all of the evidence relating to her grievance was not assembled by the FHC, and no independent investigation was conducted by the FHC. Adelman-Reyes also claims that the FHC did not apply the hearing procedures recommended by the AAUP. In February 2005, Dwyer allegedly accepted the recommendation of the FHC and, as a result, Adelman-Reyes claims that she will neither receive tenure at St. Xavier, nor, as of May 23, 2005, will she be employed by St. Xavier. Adleman brought the instant action and includes in her complaint a claim alleging discrimination against her because of her religion, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, a Title VII retaliation claim, a breach of contract claim, and tortious interference with prospective economic advantage claim ("tortious interference"). Gulley has moved to dismiss the tortious interference claim.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003). If the concern of the court or party

challenging the subject matter jurisdiction is that "subject matter jurisdiction is not evident on the face of the complaint, the motion to dismiss pursuant to Rule 12(b)(1) would be analyzed as any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *Id.*; *see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (stating that when reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"). However, if the complaint appears on its face to indicate that the court has subject matter jurisdiction, "but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *Id.* For the purpose of determining subject matter jurisdiction, this court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897 (quoting *Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). The burden of proof in regards to a Rule 12(b)(1) motion is "on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946.

## DISCUSSION

Gulley moves to dismiss the tortious interference claim on the basis that it is preempted by the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1 *et seq.* The

IHRA provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(C). The IHRA preempts Illinois tort claims that are "inextricably linked to a civil rights violation" under the IHRA. *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23(Ill. 1997). If a course of conduct "would be actionable even aside from its character as a civil rights violation because the IHRA did not 'furnish the legal duty that the defendant was alleged to have breached,' the IHRA does not preempt a state law claim seeking recovery for it." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir.2000)(quoting *Maksimovic*, 687 N.E.2d at 22).

In the instant action, Gulley claims that Adelman-Reyes' tortious interference claim is inextricably linked to her rights under the IHRA. The IHRA has several provisions that are applicable to the various claims in the instant action. The IHRA renders illegal any "discrimination against any individual because of his or her . . . religion . . . ." 775 ILCS 5/1-102(A). The IHRA , makes it unlawful to "[r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in higher education, discrimination based on citizenship status in employment, or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act. . . ." 775 ILCS 5/6-101(A). The IHRA also prohibits

7

discrimination in regard to tenure in employment by providing that "[i]t is a civil rights violation. . . [f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102(A).

For a tortious interference claim under Illinois law a plaintiff must establish the following:" 1) the plaintiff's reasonable expectation of entering into a valid business relationship; 2) the defendant's knowledge of the plaintiff's expectancy; 3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from being fulfilled; and 4) damages to the plaintiff resulting from the defendant's interference." *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 170-71 (7th Cir. 1993). *See also Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 527-28 (7th Cir. 2003)(defining the elements for a tortious interference claim as "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by defendant's wrongful conduct; and (5) damages").

Adelman-Reyes alleges in her complaint that "she was in a contractual relationship with [St. Xavier] and had a reasonable expectation of continuing her employment with [St. Xavier] both by a virtue of her position with [St. Xavier], the

length of her employment and her documented superior performance." (Compl. Par. 54). Adelman-Reyes also alleges that "[b]ased on the feedback she had received during her employment with [St. Xavier], [Adelman-Reyes] had a reasonable expectation of receiving tenure." (Compl. Par. 54). Adelman-Reyes further contends that despite Adelman-Reyes' alleged contractual relationship with St. Xavier, Gulley "intentionally and deliberately wrote a negative recommendation letter recommending that [Adelman-Reyes] be denied continuous tenure." (Compl. Par. 56). Adleman-Reyes further alleged that Gulley, without a "legitimate business purpose. . .induce[d] [St. Xavier] to deny [Adelman-Reyes'] continuous tenure" and to "cause her employment with [St. Xavier] to be terminated." (Compl. Par. 57).

Adelman-Reyes alleges that Gulley interfered with the contractual relationship between St. Xavier and Adelman-Reyes by writing the negative letter of recommendation. Adelman-Reyes' tortious interference claim is based upon a right to continued employment, which is independent of her rights under the IHRA. Adleman-Reyes contends that she has a contractual relationship with St. Xavier based upon an implied agreement that she would continue to be employed if she performed her work in a satisfactory fashion. Adleman-Reyes also alleges that the Handbook contained provisions for contractual rights regarding her entitlement to future employment. Such alleged obligations and contractual relations exist wholly separate from the IHRA rights regarding discrimination, and the tortious interference claim and breach of contract claim could stand in their own right without the

9

discrimination claims.

Gulley argues that the tortious interference claim is inextricably linked to the IHRA because the alleged motivation of Gulley has some relation to the rights provided under the IHRA. Adelman-Reyes alleges that she had complained to Chalokwu because Gulley was "harassing her because of her religious beliefs. . . ." (Compl. Par. 19). Adelman-Reyes also alleges that Gulley "prepared the negative recommendation of tenure document in response to [Adelman-Reyes'] opposition to and complaints about Dean Gulley's harassment." (Compl. Par. 22). However, the underlying motive is not relevant in regard to the tortious interference claim.

Under Illinois law, a plaintiff bringing a tortious interference claim is required to allege "malice . . . if the defendants' actions were privileged." *Delloma*, 996 F.2d at 170. Gulley does not even argue that Defendants' actions were privileged and thus does not even contend that malice is a pertinent issue in this action. Also, regardless, the malice that Gulley may have held towards Adelman-Reyes stands separate from the protections under the IHRA. The IHRA does not forbid malevolent thoughts, but rather prohibits active discrimination based upon such unlawful types of malice.

Also, in regard to the term "malice or "malicious" in the context of a tortious interference claim, the term "does not carry the ordinary meaning of vindictive or malevolent; it means intentionally and without justification." *Delloma*, 996 F.2d at 171. Such a definition of malice removes the intent even further from any of the

rights under the IHRA. The definition of the term "malicious" stated in *Delloma* is in fact inapposite to the protections under the IHRA because there is no justification for discriminating against an individual based, for example, upon the individual's religion. Although Gulley's motivations in writing the letter of recommendation may have been discriminatory and have been a violation under the IHRA, such underlying motivations by Gulley are not pertinent to the tortious interference claim.

As the Seventh Circuit makes clear, under Illinois law the pertinent inquiry in regard to the tortious interference claim is whether the defendant intended to "purposeful[ly] interfere[]" with Adelman-Reyes' "legitimate expectancy. . . ." *Delloma*, 996 F.2d at 170-71. The Seventh Circuit and the Illinois Appellate Courts also refer to the pertinent intent as an "intentional and unjustified inducement of a breach of the contract." *See, e.g., Voelker*, 353 F.3d at 527; *Chapman v. Crown Glass Corp.*, 557 N.E.2d 256, 262 (Ill. App. Ct. 1990). Adelman-Reyes alleges specifically in her complaint that her expectancy relates to her continued employment and tenure. (Compl. Par. 54). The pertinent inquiry in this case is thus whether or not Gulley intended to interfere with the contractual relationship between Adelman-Reyes and St. Xavier and induced a breach.

In addition, simply because there are claims in an action relating to unlawful harassment, discrimination, or retaliation does not mean that any tort claims brought under the same facts in the case are pre-empted by the IHRA. *See, e.g., Krocka*, 203 F.3d at 516-17; *James F. Jackson v. Local 705, Intern. Broth. of Teamsters, AFL-*

11

*CIO*, 2002 WL 460841, at *14 (N.D. Ill. 2002)(stating that in determining the preemption issue "it does not matter that the conduct giving rise to the tort claim could also support an IHRA claim"). Finally, the Supreme Court of Illinois has stated that the pertinent inquiry for the preemption issue is whether "a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the Illinois Human Rights Act." *Maksimovic*, 687 N.E.2d at 24. As is explained above, Adelman-Reyes is able to establish the elements for her tortious interference claim independent of and without a reference to the duties under the IHRA.

In ruling that the tortious interference claim is not preempted by the IHRA claim we are not finding that Adelman-Reyes actually has any contractual rights or that she does not have any contractual rights. At the motion to dismiss stage, we are required to limit our analysis to the allegations made in the complaint and accept such allegations as true. *United Phosphorus, Ltd.*, 322 F.3d at 946; *Ezekiel*, 66 F.3d at 897. As this action proceeds, Adelman-Reyes will have the burden of pointing to sufficient evidence that supports her claims.

## CONCLUSION

Based on the foregoing analysis, we deny Gulley's partial motion to dismiss the tortious interference claim (Count IV).

Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 3, 2005

12