IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON ADELMAN-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 3269 |
| | ) | |
| SAINT XAVIER UNIVERSITY AND | ) | |
| BEVERLY GULLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN

This matter is before the court on Defendants' motion for summary judgment. For the reasons stated below, we grant the motion for summary judgment in its entirety.

## BACKGROUND

Plaintiff Sharon Adelman-Reyes ("Adelman-Reyes") alleges that she is of the Jewish faith and that she began working for Defendant Saint Xavier University ("St. Xavier") in an administrative position and in a half-time teaching position during the 1998-1999 academic year. Adelman-Reyes claims that throughout her employment with St. Xavier, Defendant Beverly Gulley ("Gulley") was the Dean of the School of

1

Education ("SOE") and was her immediate supervisor. It is undisputed by the parties that in 2001, Adelman-Reyes' position was converted to a tenure-track assistant professor position, that during the 2002-2003 academic year Adelman-Reyes applied for a promotion to the rank of associate professor, and that she was promoted. According to Adelman-Reyes, Gulley and Christopher Chalokwu ("Chalokwu"), the Vice President for Academic Affairs at that time, were aware that Adelman-Reyes practiced the Jewish faith because Adelman-Reyes would occasionally miss school events that were in close proximity to religious holidays. Adelman-Reyes also contends that during her employment, she complained to Chalokwu about alleged harassment by Gulley.

It is undisputed by the parties that in the fall of 2003, Adelman-Reyes applied for tenure and that Gulley wrote a letter to the University Rank & Tenure Committee ("Tenure Committee") recommending that Adelman-Reyes be denied tenure. It is also undisputed that the SOE Rank & Tenure Committee ("SOE Committee") wrote a letter to the Tenure Committee recommending that Adelman-Reyes be given tenure. The parties also agree that on March 1, 2004, the Tenure Committee recommended to the Saint Xavier President Judith Dwyer ("Dwyer") that Reyes be denied tenure, that Chalokwu wrote a letter directly to Dwyer recommending that Adelman-Reyes be denied tenure, and that Dwyer ultimately decided that Adelman-Reyes should not receive tenure. Adelman-Reyes contends that the cause of Dwyer's decision to deny the request for tenure was the negative comments made by

Gulley in her letter of recommendation to the Tenure Committee, which Adelman-Reyes claims were made due to animus against Adelman-Reyes' religion.

Adelman-Reyes claims that in April 2004, she filed a grievance regarding her denial of tenure and that the St. Xavier Faculty Grievance Committee reviewed Adelman-Reyes' grievance and concluded that Adelman-Reyes should be brought before a Formal Hearing Committee ("FHC"). According to Adelman-Reyes, her grievance went before a FHC, but the committee did not conduct an investigation into the evidence as was required under the Saint Xavier Faculty Handbook.

Adleman-Reyes brought the instant action and includes in her complaint a claim alleging discrimination against her because of her religion, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I), a Title VII retaliation claim (Count II), a breach of contract claim (Count III), and a tortious interference with prospective economic advantage claim (Count IV). Gulley previously moved to dismiss the tortious interference claim (Count IV) and we denied that motion to dismiss. On March 2, 2006, the parties filed a stipulation to dismiss the Title VII retaliation claim (Count II) and on March 7, 2006, we granted Adelman-Reyes' request to dismiss the Title VII retaliation claim (Count II). Defendants now move for summary judgment on Counts I, III, and IV.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most

favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212

F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Title VII Discrimination Claim (Count I)

Defendants move for summary judgment on Reyes' Title VII discrimination claim (Count I). If an employer in a Title VII discrimination case brings a motion for summary judgment, the plaintiff can proceed under the direct or indirect method of proof in order to defeat the motion. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Under the direct method of proof, the plaintiff can show through direct or circumstantial evidence that the alleged harmful action of the employer was "motivated by an impermissible purpose, such as [his] race or national origin." *Id.* Direct evidence in such a context would be evidence that "can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Rudin v. Lincoln Land Community College,* 420 F.3d 712, 719-21 (7th Cir. 2005); *see also Jordan v. City of Gary,* 396 F.3d 825, 832 (7th Cir. 2005)(stating that "[t]o prove discrimination via direct evidence 'essentially requires an admission by the decision-maker that his actions were based on the prohibited animus [and that][i]t should not be surprising that in today's politically correct workplace environment such admissions are rarely, if ever, made or encountered'"); *Rozskowiak v. Village of Arlington Heights,* 415 F.3d 608, 612 (7th Cir. 2005)(stating that "[d]irect evidence 'essentially requires an admission by the decision-maker that his actions were based

upon the prohibited animus'")(quoting *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003)); *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000)(stating that under the direct method of proof a plaintiff generally must point to overt "smoking gun remarks indicating intentional discrimination"). A plaintiff can present circumstantial evidence under the direct method of proof, but such evidence must be sufficient to create "a triable issue of whether the adverse employment action of which [the plaintiff] complains had a discriminatory motivation." *Rudin,* 420 F.3d at 721. The Seventh Circuit has indicated that circumstantial evidence can create a triable issue only if there is a "'convincing mosaic' of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Rhodes v. Illinois Dept. of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004).

Under the indirect method of proof, a plaintiff must establish a *prima facie* case that will allow an inference of discrimination. *Pafford*, 148 F.3d at 665. To establish a *prima facie* case of race discrimination, a plaintiff must show: "(1) that she was a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably." *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002). If a *prima facie* case is established, there is a rebuttable presumption of discrimination and the employer is required to offer a "legitimate, non-discriminatory reason for the adverse employment action." *Cianci v. Pettibone Corp.*, 152 F.3d 723, 726 (7th Cir. 1998). If the employer provides

such a reason, the plaintiff must then show that the reason alleged by the employer is merely a pretext for discrimination. *Id.*

### A. Direct Method of Proof

Adleman-Reyes argues that she can proceed under the direct method of proof. However, there is an absence of the type of evidence that would enable her to do so. She has not pointed to any direct evidence of discrimination, nor has she pointed to a body of circumstantial evidence that is sufficient to create a triable issue regarding a discriminatory animus against her. Instead, the evidence Adelman-Reyes points to consists merely of a series of events and actions following Gulley's negative recommendation letter for tenure and the fact that Adelman-Reyes was ultimately denied tenure. Adelman-Reyes seeks to draw a variety of inferences from such facts to show that there was a hidden intent by Gulley to discriminate against Adelman-Reyes because of her religion. However, such evidence does not amount to the sort of evidence that is required to proceed under the direct method of proof. We also note that to the extent that some Seventh Circuit cases have considered whether there is sufficient showing of a causal connection for the direct method of proof, as is further explained in detail below, there is not sufficient evidence of such a causal connection in the instant action. *See Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 903 (7th Cir. 2005)(providing three factors for direct method of proof); *but see Rudin*, 420 F.3d 712 (providing the above listed analysis for direct method of

proof without the three factors). Therefore, Adelman-Reyes cannot proceed under the direct method of proof.

### B. Indirect Method of Proof

Adelman-Reyes focuses primarily on the direct method of proof and devotes only a minimal portion of her brief to addressing the indirect method of proof. Adelman-Reyes states in a footnote to her answer to the motion for summary judgment that "for the purposes of completeness" she "shall quickly move through the evidence which supports that she has established a *prima facie* case of discrimination." (Ans. 7, n.4). Such arguments are the only arguments offered by Adelman-Reyes in regard to the indirect method of proof. Adelman-Reyes argues that "[i]n the Seventh Circuit, juries in employment discrimination cases are not instructed to follow *McDonnell Douglas* . . . ." (Ans. 4). That may be true, but we are not at the trial stage of these proceedings and we are not currently ruling on the propriety of jury instructions. Defendants' motion for summary judgment is currently before the court, and the Seventh Circuit has made it very clear that in determining whether a plaintiff bringing a Title VII discrimination claim can defeat a defendant's motion for summary judgment under the indirect method of proof, the court must apply the *McDonnell Douglass* burden-shifting analysis. *Pafford*, 148 F.3d at 665. We also note that Defendants concede that Adelman-Reyes is a member of a protected class, that she was performing her job satisfactorily, and that

8

she suffered an adverse-employment action.

### 1. Similarly-Situated Employee Who Was Treated More Favorably

Adelman-Reyes argues that Mitra Fallahi ("Fallahi"), who is not of the Jewish faith, and thus is outside the protected class, was treated more favorably than her. (Ans. 7, n.4). An employee is similarly situated if the employee "is one who is 'directly comparable to [the plaintiff] in all material respects.'" *See Rogers*, 320 F.3d at 755 (quoting *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002)); *Snipes v. Ill. Dep't. of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002)(indicating that a similarly situated employee is identified by comparing the employee's "performance, qualifications and conduct" to the plaintiff's "performance, qualifications and conduct"); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002)(stating that employees are generally similarly situated if "'the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them'")(quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)).

### a. Similarly Situated Requirement

In the instant action, Adelman-Reyes fails to point to evidence that shows that Fallahi was a similarly-situated employee. Adelman-Reyes makes a conclusory

9

statement in a footnote to her memorandum that Fallahi is "a similarly situated employee." (Ans. 7 n. 4). Adelman-Reyes also makes a reference in her statement of material facts to the fact that Fallahi was a "member of" the SOE at Saint Xavier. (SAF Par. 154). However, the conclusory references to Fallahi in the footnote and in the statement of additional facts are insufficient to show that Fallahi's position was comparable to Adelman-Reyes' position. It was Adelman-Reyes' burden as the plaintiff to point to sufficient evidence on this point and Adelman-Reyes failed to do so. Thus, Adelman-Reyes has failed to point to sufficient evidence that shows that Fallahi was similarly situated. Accordingly, Adelman-Reyes fails to meet the similarly-situated employee requirement of her *prima facie* case at the outset and her Title VII claim cannot proceed further in this action. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002)(stating that if "a plaintiff has failed to identify a similarly situated co-worker outside of her protected class, or [show] that the co-worker identified by the plaintiff, while similarly situated, was not treated in a more favorable manner," the plaintiff's "failure to offer such 'comparables' dooms her Title VII . . . claims").

b. Treated More Favorably Requirement

Adelman-Reyes states that Fallahi sought tenure and an associate professor position during the same periods as Adelman-Reyes. (SAF Par. 154, 156). In regard to the associate professor position, Adelman-Reyes admits that she herself was

promoted to the associate professor position and thus she cannot show any more favorable treatment of Fallahi if Fallahi also was appointed to the position of associate professor.

In regard to the applications of Adleman-Reyes and Fallahi for tenure, Adleman-Reyes argues that Gulley wrote a letter of recommendation for Adelman-Reyes that referenced topics such as negative student feedback, which were not included in the letter written for Fallahi. Nothing, however, required Gulley to write each recommendation letter according to a template or to follow the same topics.

Adelman-Reyes also complains that Gulley asked Dr. Priscilla Hartwig ("Hartwig") to write a letter of recommendation for Fallahi, but did not ask Hartwig to write a letter of recommendation for Adelman-Reyes. (SAF Par. 167-168) However, the decision by Hartwig to write a letter of recommendation was Hartwig's own decision and no evidence has been pointed to by Adelman-Reyes that would indicate that Gulley manipulated Hartwig's decision to write a letter or influenced Hartwig to make statements in the letter in any way. Thus, Hartwig's decision to write a recommendation letter for Fallahi does not show that St. Xavier treated Fallahi more favorably than Adelman-Reyes. Therefore, Adelman-Reyes has failed to show that Fallahi was treated more favorably than Adelman-Reyes and Adelman-Reyes has failed to point to sufficient evidence to satisfy the element of her *prima facie* case that requires her to show that a similarly-situated employee outside the protected class was treated more favorably. As is indicated above, this

conclusion alone forecloses Adelman-Reyes' ability to proceed under the indirect method of proof. *Peele*, 288 F.3d at 331.

    2. Pretext

Defendants state that Adelman-Reyes was denied tenure based upon a good faith evaluation of her teaching performance and skills. Since Defendants have presented this legitimate non-discriminatory reason for the denial of tenure to Adelman-Reyes, the burden shifts to Adelman-Reyes to show that the given reason is a pretext. *Cianci*, 152 F.3d at 726. In order to establish that a given reason is a pretext, a plaintiff must show "more than a mistake on the part of the employer . . . ." *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). The plaintiff must show that the given reason "is a phony excuse," *Id.*, or that "the ostensible reason for the employment decision is really a lie contrived to mask unlawful discrimination." *Little v. Illinois Dept. of Revenue,* 369 F.3d 1007, 1012 (7th Cir. 2004). The Seventh Circuit has made it clear that "even if the business decision was ill-considered or unreasonable, provided that the decision maker honestly believed the nondiscriminatory reason he gave for the action, pretext does not exist." *Id.*

Adelman-Reyes argues that there is evidence of pretext. She contends, for example, that she complained to Chalokwu about alleged discrimination by Gulley. However, the mere fact that Adelman-Reyes believed that she was being discriminated against and complained about it is not evidence that there was in fact

discrimination. Adelman-Reyes also contends that Gulley talked with Chalokwu about the allegations of discrimination. However, Chalokwu was asked at his deposition whether he had heard "Dean Gulley make any negative comments about Dr. Reyes' religious beliefs," to which Chalokwu replied "No." (Chal. Dep. 50).

Adelman-Reyes also alleges that in April or May 2000, Hartwig had a conversation with Gulley, during which Gulley referred to Adelman-Reyes as a "liberal union-oriented Jew." ( R SF Par. 15). However, Adelman-Reyes contends that Gulley was aware of Adelman-Reyes' religious faith and Gulley in fact testified during her deposition that she was aware that Adelman-Reyes was of the Jewish faith "early on" in Adelman-Reyes' employment. (SAF Par. 35); (Gul. Dep. 95-97). Despite the fact that Gulley knew of Adelman-Reyes' Jewish faith, Adelman-Reyes admits that Gulley recommended that Adleman-Reyes be hired for the full-time non-tenure track faculty position in the SOE for the 1998-1999 academic year. ( R SF Par. 11-12). Adelman-Reyes admits that in 2001, after the above alleged remark by Gulley about Adelman-Reyes, Gulley recommended that Adelman-Reyes be appointed to the assistant professor tenure track. ( R SF Par. 17). According to Adelman-Reyes herself, Gulley characterized Adelman-Reyes "as an effective teacher, noting above-average student evaluations, and acknowledging that Dr. Adelman-Reyes' record of scholarship was developing and that she provides service to the SOE and to SXU." (SAF Par. 41).

In addition, Adelman-Reyes admits that in the 2002-2003 academic year,

13

Gulley approved Adelman-Reyes' request for a change to a full-time teaching status. ( R SF Par. 18). Adelman-Reyes admits that Gulley wrote a letter to the Tenure Committee recommending that Reyes be promoted to an associate professor position. ( R SF Par. 26). Adleman-Reyes also admits that fourteen days after Gulley wrote her recommendation letter to the Tenure Committee regarding Adelman-Reyes' application for tenure, Gulley wrote a recommendation letter supporting Adelman-Reyes' application for a sabbatical. (SAF Par. 62-65). In the letter, Gulley stated that the book that Adelman-Reyes intended to write during the sabbatical would bring academic recognition to Saint Xavier. (Gul. Dep. 135-36, SAF 64). The consistent support by Gulley of Adelman-Reyes' career advancement at Saint Xavier that is illustrated by the undisputed evidence above is not consistent with Adleman-Reyes' contention that Gulley held an animosity toward her based on her religion. No reasonable trier of fact could conclude that, despite Gulley's continual support of Adelman-Reyes' career goals, the one time when Gulley did not recommend what Adelman-Reyes desired, Gulley was secretly discriminating against Adelman-Reyes based upon her religion.

In addition, Gulley is the sole focus of Adelman-Reyes' discrimination claim. Adelman-Reyes does not dispute that other participants in the tenure approval process, some of whom concurred with Gulley's recommendation of a denial, were not motivated by an animus toward Adelman-Reyes' religion. ( R SF Par. 53, 54, 55). Therefore, we conclude that Adelman-Reyes has not pointed to sufficient

evidence showing that Defendants' given reason for denying Adelman-Reyes tenure was a pretext and, based on the above, we grant Defendants' motion for summary judgment on the Title VII discrimination claim (Count I).

II. Breach of Contract Claim (Count III)

Defendants move for summary judgment on the breach of contract claim (Count III). Adelman-Reyes claims that Saint Xavier breached its contractual obligations to her by failing to properly evaluate her work performance before the tenure decision-making process began. However, the undisputed evidence shows that Gulley and other supervisory staff at St. Xavier wrote detailed performance reviews and letters that addressed Adelman-Reyes' work performance. ( R SF Par. 17, 19, 20, 21, 22, 27, 29, 33). Adelman-Reyes admits that Gulley requested a meeting with Adelman-Reyes to discuss her annual performance review and to outline the procedures for the classroom observation of Adelman-Reyes' teaching. ( R SF Par. 19). Adelman-Reyes admits that Gulley observed her teaching in 2003. ( R SF Par. 22). Adelman-Reyes has not pointed to any contractual obligations on the part of Saint Xavier to do more, and Saint Xavier has not breached any contractual obligations in regard to the performance reviews simply because Adelman-Reyes does not agree with the content of the reviews.

Adelman-Reyes also claims that she was not accorded a proper hearing before the FHC because the FHC did not "assemble all relevant evidence," and

"conduct its own investigation." (Compl. Par. 35). However, Adelman-Reyes has not pointed to any evidence that FHC did not include in the record before it or any evidence that the FHC would have discovered had it engaged in its own investigation process. In addition, in order to prevail on a breach of contract claim, a plaintiff must establish "that there was a wrongful act and that a loss or damages resulted directly from it." *Jackson v. Hammer*, 653 N.E.2d 809, 813-14 (Ill. App. Ct. 1995)(stating that "[d]amages . . ., to be recoverable, must not be merely speculative"). Adelman-Reyes has failed to point to sufficient evidence that would show a causal link between any of the alleged breaches of St. Xavier's contractual obligations and her denial of tenure. Therefore, we grant Defendants' motion for summary judgment on the breach of contract claim (Count III).

III. Tortious Interference Claim (Count IV)

Defendants move for summary judgment on the tortious interference claim (Count IV). Under Illinois law, in order to prevail on a tortious interference with prospective economic advantage claim, a plaintiff must show: "'(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.'" *Evans v. City of Chicago*, 434 F.3d 916, 929 (7th Cir. 2006)(quoting *Anderson v. Vanden Dorpel*,

667 N.E.2d 1296 (Ill. 1996)). Adelman-Reyes has not pointed to sufficient evidence that shows that Gulley's negative recommendation caused the denial of tenure to Adelman-Reyes. In fact, there is ample evidence that indicates the contrary. For instance, there is undisputed evidence showing that many of Adelman-Reyes' colleagues at St. Xavier, in addition to Gulley, did not believe that Adelman-Reyes should be granted tenure. ( R SF Par. 38, 39, 45, 47, 48, 50, 51, 52, 54). In addition, although Gulley wrote a negative letter of recommendation to the Tenure Committee, that letter was written solely on behalf of Gulley. On the other hand, there was also a positive letter of recommendation sent to the Tenure Committee by the entire SOE Committee. The Tenure Committee considered all the information in reaching its decision to not recommend Adelman-Reyes for tenure. Adelman-Reyes has thus failed to point to sufficient evidence for a reasonable trier of fact to find causation for the tortious interference claim.

In addition, a management official of a company has a privilege that protects her "from liability for intentional interference with contract," if "h[er] actions were in accordance with h[er] job or job duties." *Hamros v. Bethany Homes and Methodist Hosp. of Chicago*, 894 F.Supp. 1176, 1181 (N.D. Ill. 1995)(indicating that a manager of a human resources department had a qualified privilege and stating that the employee "is not privileged if the acts to further h[er] own personal goals or to injure the other party to the contract, and h[er] actions were contrary to the best interest of the corporation"). In order to overcome such a privilege against a tortious

17

interference claim, a plaintiff must show that "the defendant's conduct was unjustified or malicious." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 677 (Ill. 1989).

In the instant action, Adelman-Reyes has not pointed to sufficient evidence that would indicate a malicious intent by Gulley in writing a recommendation letter that did not support tenure. Adelman-Reyes does not disputed that part of Gulley's job was to evaluate the work performance of employees and that Gulley did in fact evaluate Adelman-Reyes' work performance. Gulley provided a variety of legitimate bases for her criticisms of Adelman-Reyes in the letter of recommendation. The absence of a malicious intent on Gulley's part is also supported by the fact that Gulley had ample opportunities in prior recommendations for Adelman-Reyes to include negative information in the recommendations out of spite, and Gulley did not do so. Also, several other individuals at St. Xavier concurred with Gulley's assessment of Adelman-Reyes' work performance, which indicates that Gulley did not include unfounded criticisms of Adelman-Reyes' work performance in the recommendation letter. Therefore, we grant Defendants' motion for summary judgment on the tortious interference claim (Count IV).

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment in its entirety.

_____
Samuel Der-Yeghiayan
Dated: April 28, 2006          United States District Court Judge